IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

TENGZIYANG "PATTY" ZHANG,

    Plaintiff,

v.

KARLA KLINGNER DIAZ, *et al.*,

    Defendants.

No. 2:21-cv-04002-NKL

**ORDER**

Defendants Karla Klingner Diaz, GILS Management Group, LLC ("GILS Management"), Global Immigration Legal Services, LLC, a/k/a Global Innovative Legal Solutions,2 LLC, a/k/a Global Immigration Legal Solutions, LLC ("GI Legal"), 1900 Gulf Street Regional Center Fund 1, LP ("1900 Gulf Street"), Gorilla Products, LLC ("Gorilla"), Polymer-Wood Technologies, Inc. ("Polymer-Wood"), and Rural Economic Development Center, LLC ("REDC") move to dismiss Tengziyang Patty Zhang's complaint (Doc. 28), for improper venue.[1]  For the reasons discussed below, the motion to dismiss for improper venue is denied, but the case is transferred to the Southwestern Division of this Court.

I.   <u>**The Allegations**</u>

For the purposes of the motion to dismiss, the Court accepts the factual allegations in the complaint as true.

---

[1] Defendants' motion to dismiss also seeks, in the alternative, to compel arbitration and stay this action.  That request is addressed in a separate order.

## a. **Investment to Secure Permanent Residence**

The EB-5 Program was created by statute to permit capital investment by foreign investors. Under the program, foreign nationals who invested $500,000 or more in a qualifying commercial enterprise would be eligible to become permanent residents of the United States upon approval by the United States Citizenship and Immigration Services ("USCIS").

In early 2016, Zhang took several steps to secure permanent residence status in the United States through the EB-5 program. First, in January or February 2016, Zhang executed, *inter alia*, an Agreement for Legal Services (Doc. 1-1, the "Legal Services Agreement") and a Subscription Agreement that provided that "[i]n the event that the Purchaser's I-526 Petition is denied by USCIS, then the purchaser shall be returned the $500,000 deposited into the Escrow Account as payment for the LP Interests." The Subscription Agreement was attached to an email stating that "there would be bank supervision over the escrowed funds and that they would be protected . . . ." On or about February 25, 2016, Zhang received and executed a new Subscription Agreement (Doc. 1-3, the "Subscription Agreement") that stated, "In the event that the Purchaser's I-526 Petition is denied by USCIS, then the Purchaser shall be returned the $500,000 deposited into the Deposit Account as payment for the LP Interests . . . ." The person who signed both the Legal Services Agreement on behalf of GI Legal and the Subscription Agreement on behalf of GILS Management and REDC was Zhang's legal counsel, Diaz.

On or about February 25, 2016, in connection with her execution of the aforementioned documents, Zhang sent $545,000 to a deposit account at the Bank of Missouri that was associated with a previous business address of Diaz and GI Legal.

On or about March 22, 2016, Zhang executed the signature page of the 1900 Gulf Street Regional Center Fund 1, LP Limited Partnership Agreement (the "Limited Partnership Agreement"). Zhang alleges that she was not provided with the full text of the Limited Partnership

2

Agreement (Doc. 1-6) when she signed it.  The second Amendment to the Limited Partnership Agreement, signed by Diaz on December 11, 2015, stated that, "[i]n the event that a subscriber's I-526 Petition is not approved or the subscriber's subscription otherwise rejected by the General Partner, the subscription amount will be returned to the subscriber without interest thereon . . . ."

Diaz, on behalf of GI Legal, submitted Zhang's I-526 application to USCIS.

For subsequent legal work relating to the application, GI Legal charged Zhang $14,300.

### b. Denial of U.S. Permanent Resident Status

On or about November 19, 2019, Zhang learned through her own research that USCIS had denied her application allegedly because "the business plan for the Project provided as evidence supporting [her] application was not credible under the applicable standard."

The next day, Zhang informed Diaz and GI Legal of the denial.  A GI Legal representative informed Zhang that she could either appeal the decision or "just ask for a refund . . . ."  The representative also later said, "There must be an escrow agreement, yes."

### c. Zhang's Requests for Refund

On November 21, 2019, Zhang asked Diaz and GI Legal for a refund of her investment.  That same day, Zhang was advised that Diaz was looking at how the refund process would work and Zhang should wait to hear from them.  Diaz thereafter recommended on multiple occasions that Zhang appeal the USCIS denial.  Zhang repeatedly requested contractual documents relating to her investment, and in particular, the escrow agreement.

On December 11, 2019, Zhang was told that the escrow agreement could not be found.

On December 12, 2019, Zhang was told that Diaz's recollection was that "only the first $2M" was subject to an escrow arrangement, and that all additional monies were to be placed in a general fund.  Diaz and GI Legal further told Zhang that there were a total of ten investors, and all

ten investors would have to withdraw as a block for her money to be returned. Zhang had not been told of such a requirement, and it had not been included in any of the documents that she had been provided.

Zhang continued to request a refund of her investment, to no avail. Diaz ultimately emailed Zhang an offer of settlement and advised her that she wished to withdraw from representation of Zhang and to have no involvement with Zhang in the future.

To date, none of Zhang's money has been returned.

### d. **Relevant Provisions**

Each of the three agreements that Zhang executed contains a different dispute-resolution clause:

1. The Agreement for Legal Services, between Zhang and GI Legal, requires disputes to be resolved in AAA arbitration in Boone County, Missouri;

2. The 1900 Gulf Street Regional Center Fund I, LP Subscription Agreement between Zhang, 1900 Gulf Street, REDC, and GILS Management[2] (the "Subscription Agreement") requires disputes to be resolved in AAA arbitration in Kansas City, Missouri; and

3. The 1900 Gulf Street Regional Center Fund 1, LP Limited Partnership Agreement between Zhang, 1900 Gulf Street, and REDC, as the General Partner of 1900 Gulf Street (Doc. 1-6, the "Partnership Agreement"), requires disputes to be resolved in "district court located in Barton County, Missouri (or other appropriate state court located in Barton County, Missouri) or the federal courts located in Barton County, Missouri, and not in any other state or federal court in the United States of America or any court in any other Country."

The signature pages for each of the three agreements indicate that GILS Management, GI Legal, 1900 Gulf Street, REDC, and Diaz are related:

---

[2] It is not clear to the Court whether GILS Management signed the Subscription Agreement solely on behalf of REDC rather than on its own behalf, but both Zhang and the Defendants have described GILS Management as a party to the Subscription Agreement, and therefore, the Court treats it as such.

1. Diaz signed the Legal Services Agreement on behalf of GI Legal Services. Doc. 1-1, p. 5.

2. Diaz signed the Acceptance of Subscription as Manager of GILS Management, which itself was representing REDC in some capacity, which itself is listed as the general partner of 1900 Gulf Street. Doc. 1-3, p. 11.

3. Diaz signed the Partnership Agreement as Manager of GILS Management, which is listed as Manager of 1900 Gulf Street Regional Center LLC. Doc. 1-6, p. 34. Diaz also signed Amendment No. 1 to the Partnership Agreement, as Manager of REDC, which is listed as the General Partner of 1900 Gulf Street. *Id.*, p. 38. Finally, Diaz signed Amendment No. 2 to the Partnership Agreement as Manager of GILS Management, which itself is listed as Manager to REDC, which is listed as the General Partner of 1900 Gulf Street.

All the while, Diaz was allegedly acting as legal counsel to Zhang.

Two of the defendants, Gorilla Products and Polymer Wood, have no contractual relationship with Zhang. They are or would be beneficiaries of the investments Zhang made with or through the other defendants.

e. **The Claims**

Count I of the Complaint alleges breach of the Subscription Agreement by GILS Management, REDC, and 1900 Gulf Street based on the failure to return Zhang's funds.

Count II seeks an accounting with respect to all defendants.[3] It alleges that "Zhang has a need to discover the disposition of the investment that she made on or about February 25, 2016, since her investment has not been returned to her due to a breach of the Subscription Agreement and the Limited Partnership Agreement."

Count III alleges unjust enrichment against all defendants.

Count IV alleges professional negligence against Diaz and GI Legal, for failure, *inter alia*, "to honor express[] contractual commitments to Zhang," for failure to advise Zhang about the lack

---

[3] The claims against Fang Cheng were dismissed without prejudice for failure to timely effect service.

of an escrow fund and the risks inherent in that investment, and for failure to note and advise that the project did not meet USCIS requirements. On the basis of similar allegations, Count V alleges breach of fiduciary relationship and constructive fraud against Diaz and GI Legal.

Count VI alleges negligent misrepresentation and Count VII alleges fraudulent misrepresentation against Diaz, GI Legal, GILS Management, REDC, and 1900 Gulf Street in connection with their representation that if Zhang's investment were denied, her investment would be returned.

## II. Standard

Rule 12(b)(3) permits a party to "move to dismiss a case for improper venue." 28 U.S.C. 1406(a) provides: "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."

## III. Discussion

Zhang does not dispute that the Western Division of the Western District of Missouri is not the proper venue for this case.[4] However, Zhang asks the Court to exercise its discretion to transfer the case to the Southwestern Division of this Court.

While acknowledging that the defendants allegedly reside within either the Southwestern or St. Joseph Divisions of this Court, Defendants argue that the case should be dismissed because the forum-selection clause in the Partnership Agreement mandates that any claim arising from the agreement be filed in the Circuit Court in Barton County.

---

[4] This case was filed in the Central Division, not the Western Division, of the Western District of Missouri. The Court assumes that Zhang intended to concede that the current venue is not proper.

As a preliminary matter, several of the defendants are not parties to the Partnership Agreement, and therefore cannot enforce the forum selection clause within it against Zhang. *See, e.g., Prickett v. Lucy Lee Hosp., Inc.*, 986 S.W.2d 947, 948 (Mo. Ct. App. 1999) (affirming denial of Defendant's motion to compel arbitration because "one not a party to a contract cannot enforce the contractual terms upon one of the parties to the contract").

Further, even if any of the Defendants could seek to enforce the forum-selection clause in the Partnership Agreement in this case, the Court finds that it would not preclude venue in the District Court for the Western District of Missouri.

In relevant part, the Partnership Agreement provides: "any claim, action or proceeding based on, arising out of or in connection with this Agreement or the Partnership's affairs must be brought only in district court located in Barton County, Missouri (or other appropriate state court located in Barton County, Missouri) or the federal courts located in Barton County, Missouri, and not in any other state or federal court in the United States of America or any court in any other country." Defendants assert that there is no federal court located in Barton County, Missouri, and that this means venue is exclusively in the state courts in Barton County.

Many courts have held that a provision exclusively setting venue "in" a county that does not contain a federal courthouse has the effect of limiting venue to only the state courts in the county. *See, e.g., Presson v. Haga*, No. 1:18-CV-00099-SNLJ, 2018 WL 4184344, at *1 (E.D. Mo. Aug. 31, 2018) (requiring plaintiff to file suit in state court where forum-selection clause stated: "Any litigation relating to any disputes between the parties ***shall be filed in a Court of Competent jurisdiction in Butler County, MO***." (emphasis in original)). However, unlike the clause at issue here, the forum-selection language in such cases does not expressly mention "federal court." *See, e.g., Smart Comm'ns Collier Inc. v. Pop Cty. Sheriff's Off.*, No. 20-2496,

2021 WL 3040945, at *1 (affirming district court's dismissal of case brought in federal court where forum selection clause read: "The parties mutually agree that any litigation arising hereunder shall be brought and completed in Pope County, Arkansas and other pertinent Arkansas courts and further that neither party shall seek to remove such litigation from Circuit Courts or Appellate Courts of the State of Arkansas by application of conflict of laws or any other removal process to any Federal Court or court not in Arkansas."). The fact that the forum-selection clause in this case expressly provides for venue in "the federal courts located in Barton County, Missouri" distinguishes this case from such cases as *Presson* and *Smart Comm'ns.* To hold that the forum-selection clause here does not permit litigation in the federal court that encompasses cases within Barton County would be to render the language "the federal courts located in Barton County, Missouri" mere surplusage.

In *Sprout Healthy Vending LLC v. Seaga Mfg. Inc.*, No. SACV1401613JVSJCGX, 2014 WL 12688422, at **6–7 (C.D. Cal. Dec. 18, 2014), the Court found that forum-selection language that specifically referenced a "federal" court "in" a county that was not home to a federal courthouse was ambiguous, and therefore construed it against the drafter, concluding that the forum-selection clause permitted litigation in the federal district court for the relevant county. The clause in that case "state[d] the venue is in either the federal or state courts in Stephenson County, Illinois," although there was no federal court located in Stephenson County. *Id.* at *6. The Court ruled that the defendant "cannot correct this error in drafting the forum-selection clauses by now stating in its briefs that no federal court exists in Stephenson County, Illinois." In light of the "fundamental rule of contract interpretation . . . that where language is ambiguous the court should construe the language against the drafter of the contract," the Court concluded that the confusing

language "create[d] an ambiguity regarding the preselected forum that existed at the time [plaintiff] agreed to the contract."

*Sprout Healthy Vending* is instructive here. Because the forum-selection clause in the Partnership Agreement expressly vests jurisdiction in federal courts in Barton County, but there is not a federal courthouse in Barton County, there is an ambiguity as to whether the parties intended only state court venue or whether they intended venue to be proper in the federal court encompassing Barton County. The forum-selection clause could be read as permitting litigation only in a federal court with a courthouse physically located in Barton County or as permitting litigation in the federal (or state) courts having jurisdiction over cases arising in Barton County. "The ambiguity in the forum selection clause must be construed against the drafter." *Tockstein v. Spoeneman*, No. 4:07CV00020 ERW, 2007 WL 3352362, at *5 (E.D. Mo. Nov. 7, 2007) (denying motion to dismiss for lack of jurisdiction based on forum selection clause). The Court therefore finds that the forum-selection provision permits litigation in the Southwestern Division of the Western District of Missouri, which encompasses cases arising within Barton County.

Because (1) the Court has decided that the forum selection clause permits venue in the Southwestern Division, and (2) there is no contention that venue in the Southwestern Division of this Court otherwise is defective in light of Defendants' locations and the situs of certain real property, and (3) this case can easily be transferred to the Southwestern Division of this Court without any practical difficulties for any party and without even the necessity of a change in the presiding judge, and (4) each of the Defendants has been served and has appeared before the Court, the Court in its discretion concludes that it is in the interests of justice that this case be transferred to the Southwestern Division of this Court.

## IV. Conclusion

For the reasons discussed above, the motion to dismiss the complaint for improper venue, Doc. 28, is DENIED. The case is transferred to the Southwestern Division for all further proceedings.

/s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: August 19, 2021
Jefferson City, Missouri