IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION

| | |
|---|---|
| TENGZIYANG "PATTY" ZHANG,<br><br>Plaintiff,<br><br>v.<br><br>KARLA KLINGNER DIAZ, *et al.*,<br><br>Defendants. | No. 3:21-cv-SW-04002-NKL |

**ORDER**

Defendants Karla Klingner Diaz, GILS Management Group, LLC ("GILS Management"), Global Immigration Legal Services, LLC, a/k/a Global Innovative Legal Solutions, LLC, a/k/a Global Immigration Legal Solutions, LLC ("GI Legal"), 1900 Gulf Street Regional Center Fund 1, LP ("1900 Gulf Street"), Gorilla Products, LLC ("Gorilla"), Polymer-Wood Technologies, Inc. ("Polymer-Wood"), and Rural Economic Development Center, LLC ("REDC") move to compel arbitration and stay this action (Doc. 28). For the reasons discussed below, the motion to compel arbitration is granted as to the claims against GI Legal, 1900 Gulf Street, REDC, and GILS Management, but otherwise is denied, and the case is stayed pending resolution of the arbitration.

I. <u>**The Allegations**</u>

  a. <u>**Investment to Secure Permanent Residence**</u>

The EB-5 Program was created by statute to permit capital investment by foreign investors. Under the program, foreign nationals who invested $500,000 or more in a qualifying commercial enterprise would be eligible to become permanent residents of the United States upon approval by the United States Citizenship and Immigration Services ("USCIS").

In early 2016, Zhang took several steps to secure permanent residence status in the United States through the EB-5 program. First, in January or February 2016, Zhang executed, *inter alia*, an Agreement for Legal Services (Doc. 1-1, the "Legal Services Agreement") and a Subscription Agreement that provided that "[i]n the event that the Purchaser's I-526 Petition is denied by USCIS, then the purchaser shall be returned the $500,000 deposited into the Escrow Account as payment for the LP Interests." The Subscription Agreement was attached to an email stating that "there would be bank supervision over the escrowed funds and that they would be protected . . . ." On or about February 25, 2016, Zhang received and executed a new Subscription Agreement (Doc. 1-3, the "Subscription Agreement") that stated, "In the event that the Purchaser's I-526 Petition is denied by USCIS, then the Purchaser shall be returned the $500,000 deposited into the Deposit Account as payment for the LP Interests . . . ." The person who signed both the Legal Services Agreement on behalf of GI Legal and the Subscription Agreement on behalf of GILS Management and REDC was Zhang's legal counsel, Diaz.

On or about February 25, 2016, in connection with her execution of the aforementioned documents, Zhang sent $545,000 to a deposit account at the Bank of Missouri that was associated with a previous business address of Diaz and GI Legal.

On or about March 22, 2016, Zhang executed the signature page of the 1900 Gulf Street Regional Center Fund 1, LP Limited Partnership Agreement (the "Limited Partnership Agreement"). Zhang alleges that she was not provided with the full text of the Limited Partnership Agreement (Doc. 1-6) when she signed it. The second Amendment to the Limited Partnership Agreement, signed by Diaz on December 11, 2015, stated that, "[i]n the event that a subscriber's I-526 Petition is not approved or the subscriber's subscription otherwise rejected by the General Partner, the subscription amount will be returned to the subscriber without interest thereon . . . ."

Diaz, on behalf of GI Legal, submitted Zhang's I-526 application to USCIS.

For subsequent legal work relating to the application, GI Legal charged Zhang $14,300.

### b. Denial of U.S. Permanent Resident Status

On or about November 19, 2019, Zhang learned through her own research that USCIS had denied her application allegedly because "the business plan for the Project provided as evidence supporting [her] application was not credible under the applicable standard."

The next day, Zhang informed Diaz and GI Legal of the denial. A GI Legal representative informed Zhang that she could either appeal the decision or "just ask for a refund . . . ." The representative also later said, "There must be an escrow agreement, yes."

### c. Zhang's Requests for Refund

On November 21, 2019, Zhang asked Diaz and GI Legal for a refund of her investment. That same day, Zhang was advised that Diaz was looking at how the refund process would work and Zhang should wait to hear from them. Diaz thereafter recommended on multiple occasions that Zhang appeal the USCIS denial. Zhang repeatedly requested contractual documents relating to her investment, and in particular, the escrow agreement.

On December 11, 2019, Zhang was told that the escrow agreement could not be found.

On December 12, 2019, Zhang was told that Diaz's recollection was that "only the first $2M" was subject to an escrow arrangement, and that all additional monies were to be placed in a general fund. Diaz and GI Legal further told Zhang that there were a total of ten investors, and all ten investors would have to withdraw as a block for her money to be returned. Zhang had not been told of such a requirement, and it had not been included in any of the documents that she had been provided.

Zhang continued to request a refund of her investment, to no avail. Diaz ultimately emailed Zhang an offer of settlement and advised her that she wished to withdraw from representation of Zhang and to have no involvement with Zhang in the future.

To date, none of Zhang's money has been returned.

### d. Relevant Provisions

Each of the three agreements that Zhang executed contains a different dispute-resolution clause:

1. The Agreement for Legal Services, between Zhang and GI Legal, requires disputes to be resolved in AAA arbitration in Boone County, Missouri;

2. The 1900 Gulf Street Regional Center Fund I, LP Subscription Agreement between Zhang, 1900 Gulf Street, REDC, and GILS Management[1] (the "Subscription Agreement") requires disputes to be resolved in AAA arbitration in Kansas City, Missouri; and

3. The 1900 Gulf Street Regional Center Fund 1, LP Limited Partnership Agreement between Zhang, 1900 Gulf Street, and REDC, as the General Partner of 1900 Gulf Street (Doc. 1-6, the "Partnership Agreement"), requires disputes to be resolved in "district court located in Barton County, Missouri (or other appropriate state court located in Barton County, Missouri) or the federal courts located in Barton County, Missouri, and not in any other state or federal court in the United States of America or any court in any other Country."

The signature pages for each of the three agreements indicate that GILS Management, GI Legal, 1900 Gulf Street, REDC, and Diaz are related:

1. Diaz signed the Legal Services Agreement on behalf of GI Legal Services. Doc. 1-1, p. 5.

2. Diaz signed the Acceptance of Subscription as Manager of GILS Management, which itself was representing REDC in some capacity, which itself is listed as the general partner of 1900 Gulf Street. Doc. 1-3, p. 11.

---

[1] It is not clear to the Court whether GILS Management signed the Subscription Agreement solely on behalf of REDC rather than on its own behalf, but both Zhang and the Defendants have described GILS Management as a party to the Subscription Agreement, and therefore, the Court treats it as such.

3. Diaz signed the Partnership Agreement as Manager of GILS Management, which is listed as Manager of 1900 Gulf Street Regional Center LLC. Doc. 1-6, p. 34. Diaz also signed Amendment No. 1 to the Partnership Agreement, as Manager of REDC, which is listed as the General Partner of 1900 Gulf Street. *Id.*, p. 38. Finally, Diaz signed Amendment No. 2 to the Partnership Agreement as Manager of GILS Management, which itself is listed as Manager to REDC, which is listed as the General Partner of 1900 Gulf Street.

All the while, Diaz allegedly was acting as legal counsel to Zhang.

Two of the defendants, Gorilla Products and Polymer Wood, have no contractual relationship with Zhang. They are or would be beneficiaries of the investments Zhang made with or through the other defendants.

e. **The Claims**

Count I of the Complaint alleges breach of the Subscription Agreement by GILS Management, REDC, and 1900 Gulf Street based on the failure to return Zhang's funds.

Count II seeks an accounting with respect to all defendants.[2] It alleges that "Zhang has a need to discover the disposition of the investment that she made on or about February 25, 2016, since her investment has not been returned to her due to a breach of the Subscription Agreement and the Limited Partnership Agreement."

Count III alleges unjust enrichment against all defendants.

Count IV alleges professional negligence against Diaz and GI Legal, for failure, *inter alia*, "to honor express[] contractual commitments to Zhang," for failure to advise Zhang about the lack of an escrow fund and the risks inherent in that investment, and for failure to note and advise that the project did not meet USCIS requirements. On the basis of similar allegations, Count V alleges breach of fiduciary relationship and constructive fraud against Diaz and GI Legal.

---

[2] The claims against Fang Cheng were dismissed without prejudice for failure to timely effect service.

Count VI alleges negligent misrepresentation and Count VII alleges fraudulent misrepresentation against Diaz, GI Legal, GILS Management, REDC, and 1900 Gulf Street in connection with their representation that if Zhang's investment were denied, her investment would be returned.

## II. Motion to Compel Arbitration

### a. Standard

Under the Federal Arbitration Act, an arbitration agreement is valid and enforceable when it is (1) in writing, (2) part of a contract or transaction involving interstate commerce, and (3) valid under general principles of contract law. *See* 9 U.S.C. § 2 ("A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.").

The FAA "leaves no place for the exercise of discretion by the district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985); *see also Torres v. Simpatico, Inc.*, 781 F.3d 963, 968-69 (8th Cir. 2015) ("If a valid and enforceable arbitration agreement exists under state-law contract principles, any dispute that falls within the scope of that agreement must be submitted to arbitration."). Thus, "[w]hen a party moves to compel arbitration, [the Court's] role is to . . . determine whether there is a valid agreement to arbitrate and whether the specific dispute at issue falls within the substantive scope of that agreement." *Larry's United Super, Inc. v. Werries*, 253 F.3d 1083, 1085 (8th Cir. 2001) (quotation marks and citation omitted).

### b. Discussion

There is no dispute as to the validity of the Legal Services Agreement or the Subscription Agreement. The parties dispute only whether the claims at issue fall within the scope of the arbitration provision.

Defendants argue that "all claims against Joint Defendants Karla Klingner Diaz and Global Immigration Legal Services, LLC arise out of the Agreement for Legal Services," and therefore "must be submitted to arbitration."

The Legal Services Agreement, to which Zhang and GI Legal are parties, provides that "[a]ny disputes arising from the execution of, in or in connection with, the Agreement shall be settled through friendly consultations between both parties. In case no settlement can be reached through consultations after forty-five (45) calendar days since the dispute was initially declared, . . . all disputes, claims, questions, or differences shall be finally settled by binding arbitration in Boone County, Missouri, administered by the American Arbitration Association . . . ."

The Subscription Agreement, to which Zhang, 1900 Gulf Street, REDC, and GILS Management are parties, provides that, "In the event of any dispute, claim, question, or disagreement arising from or relating to this Agreement or the breach thereof, the parties hereto shall use their best efforts to settle the dispute, claim question or disagreement. . . . If they do not reach such solution within a period of sixty (60) calendar days, then, . . . all disputes, claims, questions, or differences shall be finally settled by binding arbitration in Kansas City, Missouri . . . ."

The Eighth Circuit has held that "[a]rbitration clauses covering claims 'arising out of' or 'relating to' an agreement are broad." *Zetor N. Am., Inc. v. Rozeboom*, 861 F.3d 807, 810 (8th Cir. 2017). Such broad language compels a district court to "'send a claim to arbitration as long as the

underlying factual allegations simply touch matters covered by the arbitration provision.'" *Id.* (citing *Unison Co. v. Juhl Energy Dev., Inc.*, 789 F.3d 816, 818 (8th Cir. 2015)).

In light of the fact that the investment scheme at issue is tied to the three referenced agreements, two of which have arbitration provisions, and given the requirement that arbitration provisions including such broad language as "arising out of" and "relating to" be construed broadly, the Court must conclude that the arbitration provisions cover the claims against the parties to the relevant agreements. *Zetor N. Am., Inc.*, 861 F.3d at 810; *see also Indus. Wire Prods. v. Costco Wholesale Corp.*, 576 F.3d 516, 521 (8th Cir. 2009) (holding that courts must "interpret arbitration clauses liberally and resolve any doubts in favor of arbitration"). Accordingly, the Court finds that the claims against the parties to the Legal Services Agreement and Subscription Agreement are subject to the arbitration provisions therein.

In their motion, Defendants stated in conclusory fashion that the claims against all of the defendants "are based, at least in part, on either the Subscription Agreement or the Agreement for Legal Services, making them all subject to arbitration." Zhang contended that the defendants who are not parties to the Legal Services Agreement and Subscription Agreement are not entitled to enforce the arbitration provisions in those agreements. Defendants made no reply to that argument, and indeed appeared to concede that only "some of [Zhang]'s claims may be subject to arbitration." Doc. 36, p. 1 ("The crux of Joint Defendants' Motion was that Plaintiff filed her Complaint in the improper venue and some of her claims may be subject to arbitration."). In light of Defendants' apparent abandonment of—and failure to present any legal or factual argument in support of—their suggestion that the claims against all of the defendants are subject to arbitration, the Court does not consider whether Defendants who are not parties to the Legal Services Agreement or Subscription Agreement are entitled to compel arbitration in this case.

Zhang argues that compelling arbitration in this case would prejudice her because it would require duplication of effort, citing *Erdman Co. v. Phoenix Land & Acquisition, LLC*, 650 F.3d 1115, 1119 (8th Cir. 2011), but *Erdman* discussed prejudice only as the third part of a three-part analysis of whether the right to arbitration had been waived. Here, Plaintiff has not suggested that any of the Defendants has waived a contractual right to arbitrate. *Erdman* therefore does not apply.

Furthermore, Zhang's argument that considerations of judicial efficiency warrant keeping all of the claims together in this Court is contrary to the law discussed above requiring a broad interpretation of arbitration provisions. The strong policy in favor of enforcing arbitration provisions takes precedence over any concern about judicial economy.

### III. <u>**Stay Pending Arbitration**</u>

For reasons of judicial economy, the Court shall stay this action until the arbitration has been completed. *See Contracting Nw., Inc. v. City of Fredericksburg, Iowa*, 713 F.2d 382, 387 (8th Cir. 1983) (noting that the procedure of staying claims involving non-parties to an arbitration agreement "makes eminent sense when the third party litigation involves common questions of fact that are within the scope of the arbitration agreement" because, "while it is true that the arbitrator's findings will not be binding as to those not parties to the arbitration, considerations of judicial economy and avoidance of confusion and possible inconsistent results nonetheless militate in favor of staying the entire action" (quotation marks and citation omitted)); *see also* 9 U.S.C. § 3 ("If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . .").

## IV. Conclusion

Defendants' motion to compel arbitration (Doc. 28) is denied in part and granted in part. The Court GRANTS the motion to compel arbitration of the claims (Counts I, II, III, IV, V, VI, and VII) against GI Legal, 1900 Gulf Street, REDC, and GILS Management. The motion to compel arbitration of the claims against the remaining defendants (Counts II, III, IV, V, VI, and VII) is DENIED. Finally, the case shall be stayed pending resolution of the arbitration. Counts I, II, III, IV, V, VI, and VII against Diaz and Counts II and III against Gorilla and Polymer-Wood, which are not subject to arbitration under this Order, will be subject to litigation once the stay is lifted.

/s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: August 19, 2021
Jefferson City, Missouri